IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CHARITY WALKER KEENE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 115-050 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Charity Walker Keene appeals the decision of the Acting Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Plaintiff protectively applied for DIB and SSI on April 27, 2011, alleging a disability onset date of June 30, 2009. Tr. ("R."), pp. 134-35, 140, 179. A prior DIB claim had been denied on September 13, 2010. R. 179. Plaintiff subsequently amended her onset date for the applications currently under review to December 21, 2009. R. 228. Plaintiff was twenty-nine years old at her amended alleged disability onset date and was thirty-three years old at the time

the Administrative Law Judge ("ALJ") issued the decision currently under consideration by the Court. R. 179, 228. Plaintiff applied for benefits based on allegations of Crohn's disease and fistulas. R. 183. Plaintiff completed twelfth grade, and prior to her alleged disability, Plaintiff had accrued a relevant work history that included jobs as a server/waitress, veterinarian technician, and daycare attendant. R. 20-21, 53,183-84.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 63-70, 73-79. Plaintiff requested a hearing before an ALJ, R. 81-82, and the ALJ held a hearing on July 19, 2013, R. 28-57. At the hearing, the ALJ heard testimony from Plaintiff, who appeared with a non-attorney representative, as well as from Roger Decker, a Vocational Expert ("VE"). Id. On October 28, 2013, the ALJ issued an unfavorable decision. R. 6-27.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since December 21, 2009, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the following severe impairments: irritable bowel disease and Crohn's disease and its sequelae (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except the claimant can only perform frequent balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. The claimant can perform occasional climbing of ladders, ropes, or scaffolds. She needs to avoid concentrated exposure to hazards. The claimant is

2

> capable of performing past relevant work as a veterinary technician and daycare attendant because this work does not require the performance of work-related activities precluded by the claimant's RFC (20 C.F.R. §§ 404.1565 and 416.965).

R. 11-20.

Because the ALJ determined Plaintiff could perform her past relevant work, the sequential evaluation process stopped, and the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from December 21, 2009, through the date of the decision, October 28, 2013. R. 21-22. When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-4, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to adequately explain her RFC determination that Plaintiff could perform medium work with the exceptions noted in the opinion; (2) the ALJ failed to properly evaluate the opinion of Dr. Warren Botnick; and (3) the ALJ failed to properly evaluate Plaintiff's credibility. See doc. no. 14 ("Pl.'s Br.") & doc. no. 17 ("Pl.'s Reply"). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 16 (Comm'r's Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by

substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether

correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff argues the ALJ failed to account for the limitations resulting from Crohn's Disease when determining Plaintiff has an RFC for medium work. See Pl.'s Br. & Pl.'s Reply. Plaintiff contends the ALJ did not properly weigh medical evidence, which in turn caused the ALJ to improperly weigh Plaintiff's credibility. As explained below, the ALJ did not err in her evaluation of the medical evidence or Plaintiff's credibility, and she thoroughly explained her rationale for determining Plaintiff has an RFC for medium work. Therefore, none of Plaintiff's arguments form a valid basis for reversal or remand.

### A. Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and

5

difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining whether a claimant can return to her past relevant work, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

In categorizing the physical exertion requirements of jobs, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R §§ 404.1567 & 416.967. Here, the ALJ determined Plaintiff has the ability to perform medium work, except she can only perform frequent balancing stooping, kneeling, crouching, crawling, and climbing ramps and stairs. Plaintiff is also limited to occasional climbing of ladders, ropes, or scaffold and needs to avoid concentrated exposure to hazard. "Medium work" is defined as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work . . . he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c) & 416.967(c).

In determining at step four in the sequential process whether Plaintiff's RFC for a limited range of medium work would allow her to perform past relevant work, the ALJ consulted the VE in accordance with 20 C.F.R. § 404.1560(b)(2), which provides as follows: "A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." The VE identified Plaintiff's past work as a server/waitress as light work and past work as a veterinarian technician and daycare attendant as medium work. R. 21, 53.

**B.     The ALJ Properly Weighed the Expert Medical Opinions.**

**1.     Standard for Evaluating Medical Opinions**

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. §§ 404.1527(c)(1)-(2), (5) & 416.927(c)(1)-(2), (5). However, Social Security Ruling ("SSR") 96-6p provides that findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Lastly, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. §§ 404.1527(d) & 416.927(d).

### 2. The ALJ Properly Rejected the Opinion of a Family Friend Who Never Treated Plaintiff or Reviewed Her Medical Records.

Plaintiff claims the ALJ erred in failing to accept the disability opinion of Dr. Warren Botnick, offered in a one-page, open letter, and without any objective medical evidence to support his conclusions. Although Plaintiff conceded at the hearing she has never been seen or treated by Dr. Botnick, R. 52-53, she now claims that because Dr. Botnick used general medical terminology, he must have been "quite familiar" with Plaintiff's particular condition. Pl.'s Br., p. 17. Moreover, contends Plaintiff, the ALJ should have recontacted Dr. Botnick to clarify the basis for his opinion about Plaintiff rather than "speculate" and substitute her (the

8

ALJ's) opinion for that of a physician. Id. at 18-19. Given that the ALJ relied on the medically documented opinions of Plaintiff's treating physicians and a state medical consultant to determine Plaintiff has an RFC for medium work, the Court rejects Plaintiff's arguments.

According to Dr. Botnick, Plaintiff's "Crohn disease might itself suffice for determination of disability, with its symptoms of abdominal pain and diarrhea." R. 233. He then opines that "the manifestations of short bowel syndrome (SBS), following extensive bowel resection in the latter part of 2010, are even more limiting for her in trying to maintain employment." Id. He further opines that employment for Plaintiff is impossible because of "the need for frequent trips to the restroom and the specter of fecal incontinence." Id. Dr. Botnick then compares Plaintiff's inability to work to patients suffering from severe emphysema and narcolepsy, reaching the conclusion - without reference or objective medical support related to Plaintiff's specific circumstances - that "employers are unwilling to hire or retain a worker whose day will be interrupted by bouts of diarrhea, abdominal cramps, or even incontinence." Id. After offering these opinions, Dr. Botnick reveals in the final paragraph of his open letter that he does not provide full-time patient care and works in the pharmaceutical industry. Id. The only attachments to this open letter are a Curriculum Vitae for Dr. Botnick's current job, "Clinical Development Director, Respiratory," and a four-page publication by the National Institutes of Health about Short Bowel Syndrome. R. 235-41.

The ALJ properly rejected the disability opinion by Dr. Botnick for several reasons. First, as noted by the ALJ, the ultimate issued of disability is reserved to the Commissioner. R. 17-18; see also SSR 96-5p. Second, the ALJ highlights Dr. Botnick's non-familiarity with Plaintiff's case by noting his description of a 2010 bowel resection surgery when Plaintiff actually had surgery in 2011 to repair a fistula, resect her bowel, and repair her bladder, (R. 15,

9

19.)  No matter argues Plaintiff, through citation to case law outside of this Circuit and a version of the regulations no longer in effect, (Pl.'s Br., p. 18), the ALJ should have recontacted Dr. Botnick to clarify the basis of his opinion.  Even if the regulations read as Plaintiff suggests, the ALJ was not required to recontact Dr. Botnick, as he was neither an examining or treating physician, a fact which leads to the third reason the ALJ properly gave minimal weight to Dr. Botnick's opinion.

There is no evidence Dr. Botnick ever treated Plaintiff or reviewed her medical records, suggesting he appeared to rely on Plaintiff's not entirely credible subjective description of her impairments to reach his conclusions.[1]  Plaintiff conceded at the hearing that Dr. Botnick is a friend of the family who has never seen or treated Plaintiff, but rather Plaintiff has just talked with him about "what's going on" with her.  R. 52-53.  Nor was the ALJ left to speculate about Plaintiff's condition or substitute her own judgment for that of a medical professional because, as discussed below, the record is replete with medical evidence from physicians who either examined and treated Plaintiff, or at a minimum, examined her medical records such that there was sufficient information in the record for the ALJ to make an informed decision based on competent medical evidence.  See Ingram v. Comm'r Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007) (recognizing ALJ not required to seek additional medical information so long as record contains sufficient information to make an informed decision on a claimant's application).

Plaintiff points to no medical evidence in the record supporting Dr. Botnick's severely limiting opinion.  The ALJ specifically noted the medically unsupported opinion of

---

[1]The ALJ's correct analysis of Plaintiff's credibility is discussed in detail in Part III(C), *infra*.

10

Dr. Botnick cannot outweigh the analysis of the objective clinical and laboratory evidence and Plaintiff's overall functional abilities. R. 19. This assessment came after the ALJ's thorough and sifting examination of medical evidence supporting the RFC for medium work. R. 12-16, 18.

The ALJ began her review of the medical evidence at a point several months prior to Plaintiff's amended alleged onset date and carefully detailed the records of Plaintiff's treating physician, Matthew S. Cranford, M.D. The ALJ referenced the numerous notations throughout Dr. Cranford's records and those of John Cheape, M.D., who performed Plaintiff's surgery, that she was clinically stable or doing well. See, e.g., R. 13, 15, 245, 251, 325. Although Plaintiff had been admitted to the hospital on April 26, 2011 with an acute exacerbation of her Crohn's disease, she had not been taking her medicine for several months prior. R. 14 (citing Ex. 3F). Subsequent to Plaintiff's surgery in November of 2011, Dr. Cheape and Dr. Cranford described Plaintiff's condition as "dramatically improved," (R. 393), and "significantly improved," (R. 402). Plaintiff's suggestion the ALJ failed to account for Plaintiff's "flare-ups" is a red herring, (Pl.'s Reply, p. 2), because her loss of one job, reportedly for a flare-up, occurred prior to her alleged onset date. R. 246. Plaintiff admitted she had not looked for work since that time, (R. 37), let alone since her surgery which resulted, according to treatment notes, in dramatic improvement in her condition.

In fact, Plaintiff does not point to any alleged error of the ALJ's treatment of the opinions of her treating physicians, rather, as described above, she complains the ALJ did not credit the medically unsupported opinion of Dr. Botnick. In that vein, she faults the ALJ for crediting the opinion of a state agency consultant Dr. Robert Williams who, like Dr. Botnick, did not examine her. Pl.'s Br., pp. 17-18. Unlike Dr. Botnick, however, Dr. Williams

reviewed Plaintiff's medical records as of December 29, 2011, R. 394-401, and under the regulations, his opinion regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. See SSR 96-6p, 1996 WL 374180, at *1.

In sum, the Court finds no error with the manner in which the ALJ analyzed the medical evidence of record. Plaintiff identifies no objective medical findings or treatment plans showing she complained of symptoms, or received treatment consistent with, a condition of the severity described by Dr. Botnick in his open letter that attaches no medical records, let alone medical information specific to Plaintiff's circumstances. Thus, the Court turns its attention to the final allegation of error, the ALJ's assessment of Plaintiff's credibility.

### C. The ALJ Properly Analyzed Plaintiff's Subjective Complaints.

In an argument that dovetails with her argument that the ALJ improperly rejected Dr. Botnick's opinion when formulating an RFC, Plaintiff also argues the ALJ erred in assessing her credibility. Pl.'s Br., pp. 19-21. As explained above, the ALJ discounted Dr. Botnick's opinion, in part, because it appeared he based his conclusions on Plaintiff's subjective complaints. Those subjective complaints included allegations that Plaintiff uses the restroom between nine and fourteen or fifteen times per day. R. 37, 49-50. Plaintiff testified she always has a change of clothes with her, wears pads when she goes anywhere, and carries wipes with her to help with "a raw bottom." R. 40-41, 51. She further testified that she has to take a shower after she goes to the restroom "maybe two times per week." R. 47. Plaintiff also testified that she sometimes had trouble paying for the medication prescribed to suppress her Crohn's disease. R. 42.

### 1. The Standard for Evaluating Subjective Complaints.

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Under the applicable regulations, the ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability." Jarrell v. Comm'r of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (citing 20 C.F.R. § 404.1529(c)(4)).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[2] As the Eleventh Circuit explained:

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted). As explained below, the ALJ properly conducted the Holt analysis and reached the conclusion that Plaintiff's medically determinable impairments could possibly cause the alleged symptoms, but her subjective complaints concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. R. 19-20.

### 2. The ALJ Thoroughly Discussed and Properly Discredited Plaintiff's Subjective Complaints.

Plaintiff contends that because the ALJ determined at step two there was objective evidence of Plaintiff's irritable bowel disease and Crohn's disease, it was improper to rely on a lack of objective evidence as a reason to discredit the level of limitations claimed by Plaintiff, namely "flare-ups" of abdominal pain and frequent and urgent trips to the restroom upwards of fifteen times per day because of uncontrolled diarrhea. Pl.'s Br., pp. 19-21. However, the severity test at step two of the sequential process is designed to screen out only groundless claims, Tuggerson-Brown v. Commissioner of Soc. Sec., 572 F. App'x 949, 950 (11th Cir. 2014), and has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working." Stratton v. Bowen, 827 F.2d 1447, 1452 & n.9 (11th Cir. 1987) (citation omitted). In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987). Thus, a determination at step two of the sequential process that Plaintiff's

irritable bowel disease and Crohn's disease were severe, a "slight abnormality" test, does not bind the ALJ to accepting all of Plaintiff's claimed limitations.

As discussed in detail above, the ALJ conducted a thorough and sifting examination of the medical evidence of record, and carefully compared Plaintiff's subjective complaints to the objective evidence to determine whether Plaintiff's medical condition could be expected to give rise to the level of limitations she claimed. R. 12-20. For example, although Plaintiff had reported some loose stools, primarily before her surgery and often after failing to take her prescribed medication, there was no mention of an exact frequency, let alone an exact number upwards of nine to fourteen or fifteen times per day. R. 19. The ALJ also noted Plaintiff's surgeon, Dr. Cheape, did not mention any problems with incontinence or needing to use a pad on a regular basis, a fact that if mentioned to the surgeon seems likely to have made it into progress notes. Id. Likewise, in her briefing before this Court, Plaintiff does not identify any portion of the record where she made complaints to any medical providers of problems with such frequent and urgent trips to the restroom such that she had to carry a change of clothes and wipes. The claim that the ALJ failed to consider Plaintiff's pre-surgery status is incorrect, as the ALJ began her discussion of the medical evidence with a June 2009 visit to Dr. Cranford, and although recognizing the occasional "flare-up," there was nothing in the medical records suggesting even these flare-ups prevented Plaintiff from performing all work. R. 12-20.

The first mention of "multiple liquid stools during the course of the day with associated urgency" is not found until approximately one month prior to Plaintiff's hearing before the ALJ. R. 19, 445. Dr. Cranford's notes on that day indicate the notation is based only on Plaintiff's complaint. R. 445. The notes from that day also indicated there was no charge for that day's visit because Plaintiff had no insurance. Id. That notation casts doubt on Plaintiff's testimony at

the hearing, offered in response to the ALJ's question about why Plaintiff was not regularly seeing Dr. Cranford for treatment, that she could not afford to keep her appointments. R. 38-40. Indeed, the ALJ noted the small number of follow-up visits after Plaintiff's surgery and large time gaps in treatment undermine Plaintiff's claims of disabling limitations. R. 19-20. Minimal or no treatment for an alleged disabling condition may be validly considered by an ALJ in discrediting a claimant's subjective complaints. Castle v. Colvin, 557 F. App'x 849, 853 (11th Cir. 2014); Gamble v. Colvin, No. 5:13-CV-01959-SLB, 2015 WL 2095064, at *6 (N.D. Ala. May 5, 2015).

The ALJ further noted that Plaintiff went to the emergency room in March of 2012 for an insect bite and in July 2012 for a sprained ankle, suggesting that if she were having abdominal pain and fecal incontinence to the extent claimed at the hearing, she could have gone to the emergency room, even if she was unable to afford to keep regularly scheduled doctor's appointments. R. 20, 422, 427. The records show she went to the emergency room for abdominal pain only once after her surgery, on November 6, 2012, after stopping her maintenance therapy for two months, and despite discharge instruction to follow-up with Dr. Cranford, did not return to him until shortly before her administrative hearing. R. 20, 431-37, 445.

As to Plaintiff's assertions that she could not afford the $42.00 per month medication that significantly improved her symptoms, the ALJ noted Plaintiff spends approximately $75.00 per month on a smoking habit supported by money from Plaintiff's parents. R. 20, 49. Thus, there appeared to be a source from which Plaintiff could have sought help. Indeed, when pressed at the administrative hearing about seeking out a free clinic to obtain treatment, Plaintiff admitted that when she was put on a waiting list, she "ended up going and finding other resources." R. 40.

In sum, the ALJ relied on numerous pieces of information in assessing Plaintiff's credibility. The ALJ properly considered the record evidence in total in discrediting Plaintiff's subjective complaints. The ALJ pointed out inconsistencies between Plaintiff's testimony and the objective evidence of record, accounted for why claims of an inability to pay for treatment did not ring true, observed no evidence from a treating or examining physician supported the severe limitations reported by Plaintiff, and noted that nothing in the record would support a finding that Plaintiff could not perform medium work with the limitations noted. Other than the already discredited reliance on the medically unsupported opinion of family friend Dr. Botnick, Plaintiff points to nothing in the record that undermines the ALJ's conclusion. Although Plaintiff may disagree with the conclusion reached by the ALJ, the credibility determination is supported by substantial evidence.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 5th day of April, 2016, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA